UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PREMIERE, INC.** | ***CIVIL NO. 6: 16-0066** |
| **VERSUS** | ***JUDGE JAMES** |
| **TANGOE, INC.** | ***MAGISTRATE JUDGE HANNA** |

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Transfer Venue filed by the defendant, Tangoe, Inc. ("Tangoe"). [rec. doc. 8]. Premiere, Inc. ("Premiere") has filed Opposition [rec. docs. 13], to which Tangoe has filed a Reply. [rec. doc. 18]. Oral Argument on the Motion was set for June 28, 2016.

For the following reasons, it is recommended that Tangoe's Motion to Transfer [rec. doc. 8] be **GRANTED**, and that this action be transferred to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1404(a). The **oral argument** set for June 28, 2016 is **canceled**.

## BACKGROUND

Premiere, an oilfield service company, is a Louisiana corporation with its principal place of business in Iberia Parish, Louisiana, however, it also maintains an office in Houston, Texas. Tangoe, a telecommunications service provider, is a Delaware corporation with its principal place of business in Connecticut, however, it

also maintains an office in Austin, Texas.

Premiere entered into a Master Service Agreement ("MSA") with Tangoe in June, 2014. The MSA was executed by John Walton on behalf of Premiere at its Houston, Texas office on June 11, 2014; Gary Martino executed the agreement on behalf of Tangoe on June 12, 2014 in Connecticut. There were two more CommCare Premium Integrated Schedules that were subsequently executed that were subject to the terms of the MSA - both were executed on behalf of Premiere in Texas and Tangoe in Connecticut. [rec. doc. 14-1, MSA ¶ 1.4; rec. doc. 14-2]. The Court will collectively refer to the MSA and the Schedules as the "Contract".

Under the Contract, Premiere was to pay quarterly fees in the amount of $33,810.00 to Tangoe for its services [rec. doc. 14-2, pg. 11, Schedule Exhibit A]; Tangoe was to receive a quarterly contingency fee of 33% of the gross savings obtained by Tangoe resulting from the use of Premiere's services. [rec. doc. 14-2, pg. 12, Schedule Exhibit A].

The Contract contains a choice of law and forum selection clause which reads as follows:

> 10.1 The governing law for any claim arising under this Agreement shall be the laws of the State of Connecticut. The venue for any claim arising under this Agreement shall be the state and federal courts located in New Haven, Connecticut. Both parties agree to personal and subject matter jurisdiction in the County of New Haven, State of Connecticut and waive any rights to bring a motion based on jurisdiction or venue. If either

> Tangoe or Customer employs attorneys to enforce any rights arising out of or relating to this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees, costs and other expenses.

[rec. doc. 14-1, pg. 4, ¶ 10.1].

Despite this language, Premiere filed this lawsuit in this court seeking to rescind the Contract between Tangoe and Premiere on two grounds: (1) error in the formation of the contract because the substantial savings allegedly promised by Tangoe for the use of its services, the alleged cause and object of the contract by Premiere, is alleged not to have been the true object or cause of the contract; or (2) fraud in the inducement of the contract because Tangoe allegedly misrepresented the savings which could be realized under the contract. [rec. doc. 1, ¶ I, V, VIII]. In addition to rescission, Premiere seeks damages in the form of all fees it paid to Tangoe under the contract for its services which allegedly would not have been incurred but for Tangoe's alleged misrepresentations, as well as attorney's fees pursuant to Louisiana Civil Code article 1958. [rec. doc. 1, ¶ IX, X].

Tangoe seeks to transfer this lawsuit to the United States District Court for the District of Connecticut in accordance with the forum selection clause contained in Contract pursuant to 28 U.S.C. § 1404(a). Premiere contends that the forum selection clause does not apply to its claims for rescission and damages because the claims are outside the scope of the clause.

## LAW AND ANALYSIS

**I. The Forum Selection Clause Applies to Premiere's Claims**

The Supreme Court explained in *Atlantic Marine Const. Co. Inc. v. U.S. Dist. Court for W. Dist. of Texas,* that 28 U.S.C. § 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atlantic Marine,* - - U.S. - - , 134 S.Ct. 568, 579 (2013). Nonetheless, before this Court may proceed to apply *Atlantic Marine*, several conditions must be met, including determination of whether the forum selection clause applies to the type of claims asserted in the lawsuit. When determining which causes of action are covered under a forum selection clause, courts should look to the language of the agreement. *Haughton v. Plan Admin'r of Xerox Corp.,* 2 F.Supp.3d 928, 932 (W.D. La. 2014) *citing Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 616 (5th Cir. 2007); *Marinechance Shipping Ltd. v. Sebastian,* 143 F.3d 216, 222 (5th Cir. 1998).

Premiere argues that the forum selection clause does not apply to its claims because the phrase "arising under" must be narrowly construed so as to exclude those claims.[1] "The term 'arising' is generally interpreted as indicating a causal connection"; the word "connotes and denotes an origin or genesis of a thing." *Braspetro Oil Servs.*

---

[1] At the outset, the Court recognizes that the term "relating to" in a forum selection clause casts a wider net than the term "arising out of" or "arising under." However, that general recognition does not resolve the question of whether Premiere's claims fall within the clause.

*Co.*, 240 Fed. Appx. at 616; *Smith v. Swift Transportation Co. of Arizona, LLC*, 915 F.Supp.2d 766, 774 (W.D. La. 2013) *citing Laserdynamics v. Acer America Corp.*, 209 F.R.D. 388, 391 (S.D. Tex. 2002).

    Given this interpretation, Premeire's contention that the forum selection clause does not apply to its claims against Tangoe because the claims are outside the clause's scope fails. In the Complaint, Premiere expressly seeks a return of the funds it paid Tangoe for the services Tangoe provided to it under the contract. Any fraudulent act or misrepresentation in obtaining those funds, therefore, arose from and grew out of the existence of the contract as the monies would not have been paid absent the contract. As such, the claims are causally connected to the contract. *Braspetro Oil Servs. Co.*, 240 Fed. Appx. at 616; *see also Collin County v. Siemens Business Services, Inc.*, 250 Fed. Appx. 45, 50 (5th Cir. 2007) ( finding "no indication that the [plaintiff's] fraud and negligent misrepresentation claims could be maintained without reference to its contracts with [the defendants]": and therefore were encompassed by the venue clauses in the contracts); *Laserdynamics v. Acer America Corp.*, 209 F.R.D. 388, 391 (S.D. Tex. 2002) (finding "[i]f any right or obligation in the. . . agreement is threatened or impaired by an act of the parties. . . , that act gives rise to a dispute under the agreement.").

    Several courts around the country have found that claims which stem from the

business relation between the parties, claims which arguably implicate the contract's terms and arguably depend on the construction of the agreement "arise" under, or out of, the contract for purposes of enforcing a forum selection clause. *Skold v. Galderma Laboratories, LP*, 99 F.Supp.3d 585, 608-609 (E.D. Pa. 2015) *citing Crescent International v. Avatar Communities, Inc.*, 857 F.2d 943 (3d Cir. 1988) *(per curiam)*, *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600 (7th Cir. 1994), *YWCA v. HMC Entm't, Inc.*, 1992 WL 279361, at *4 (S.D. N.Y. 1992); *Claimserviceprovider, Inc. v. St. Paul Travelers Companies, Inc.*, 2006 WL 2989240, * 5-6 (E.D. La. 2006) *Terra Intern., Inc.,*, 119 F.3d 688, 694 (8th Cir. 1997); and *McNair v. Monsanto Co*, 279 F.Supp.2d 1290, 1307 (M.D. Ga. 2003). (finding the "alleged misrepresentations all depend on the contractual work arrangement between plaintiffs and defendants [and] will ultimately depend on, and relates to interpretation of, the agreements, the misrepresentation claim must "arise under" the agreements.").

In this case, Premiere's claims against Tangoe arise under the contract. The entire business relationship between the parties stems from the contract, and any determination as to whether the contract should be rescinded will necessarily depend on and implicate the terms of the contract and the parties respective rights and obligations under the contract. Furthermore, Premiere's argument that the alleged fraudulent acts or misrepresentations did not arise out of the contract is foreclosed by Fifth Circuit

precedent.

The Fifth Circuit rejected this same argument in *Braspetro*, 240 Fed. Appx. at 616 *citing Haynsworth v. Lloyd's of London,* 21 F.3d 956, 960-61 (5th Cir. 1997). The *Braspetro* court pointed out that, in *Haynsworth*, the plaintiffs alleged fraud, breach of fiduciary duty, and violations of the Texas Deceptive Trade and Practice Consumer Protection Act and the Texas Securities Act based on the defendants' alleged efforts to induce the plaintiffs to unwittingly underwrite high-risk insurance policies. The district court nevertheless enforced the forum selection clause. *Id. citing Haynsworth,* 21 F.3d at 963-64. On appeal, the plaintiffs asserted that the defendants made certain misrepresentations to lure them into agreeing to the forum selection clause, and that they entered into the agreements based on the alleged fraud. *Id.* The *Haynsworth* court rejected that argument, holding that any misrepresentations that were made related to the contract as a whole. *Id. citing Haynsworth,* 21 F.3d at 963. Specifically, the court held that "fraud . . . must be specific to a forum selection clause . . . to invalidate it . . . . [A]llegations of such conduct as to the contract as a whole-or portions of it other than the [forum selection] clause-are insufficient; the claims of fraud . . . must be aimed straight at the [forum selection] clause . . . to succeed." *Id*. at 616-617 *quoting Haynsworth,* 21 F.3d at 963 (citations omitted). Because the alleged fraud in the case was not specific to the forum selection clause but rather went to both the contract as a

7

whole and also to the bond requirement contained in the contract, the *Braspetro* court found that the plaintiff's argument was "inconsistent with our circuit's precedent" and found the plaintiff's claims were "within the scope of the forum selection clause." *Id.* at 617.

In *International Software Systems, Inc. v. Amplicon, Inc.*, 77 F.3d 112 (5th Cir. 1996), the Fifth Circuit held that damage claims for fraudulent inducement and rescission of a lease arose out of the lease and were therefore subject to the forum selection clause of the lease. In that case, the lessee brought an action against the lessor in Texas state court alleging that it was fraudulently induced into entering lease agreement and accordingly, sought damages and rescission of the lease. *International Software Systems*, 77 F.3d at 113. The lessor removed the action to the United States District Court for the Western District of Texas. *Id.* The clause at issue stated that ""[t]he lessee agrees that all litigation arising out of this lease or any breach thereof shall be filed and conducted in the California Superior Court for the County of Orange. . . ." The district court dismissed the case based on the forum selection clause finding that the lessee's claims arose out of the contract. *Id*. at 114. On appeal, the lessee argued that venue was proper in the Western District of Texas because its claims did not "arise out of the contract." *Id*. at 116. The Fifth Circuit expressly rejected that argument as follows:

8

> We agree with the district court that even though [the lessee] is not technically suing for breach of contract, the entire controversy centers around which party's interpretation of the contract is the correct one, and whether [the lessee] was fraudulently induced to enter into the contract.

*Id.* Accordingly, the Fifth Circuit enforced the forum selection clause and required the lessee to sue the lessor in California. *Id.* *International Software Systems* therefore mandates that the same conclusion be reached in this case.[2]

**II. The Forum Selection Clause is Valid and Enforceable**

Having determined that this dispute is within the scope of the forum selection clause, the next inquiry is whether the forum selection clause is valid and enforceable. The enforceability of a forum selection clause is decided pursuant to federal law. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997). Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10,P 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Nonetheless, "[t]he presumption of enforceability . . . may be overcome by a clear showing that the clause is unreasonable under the circumstances." *Haynsworth, supra* (citation and internal quotation marks omitted). A party may demonstrate unreasonableness where

---

[2] The Court recognizes that the Fifth Circuit's discussion of the use of Rule 12(b)(3) to dismiss the case for improper venue did not survive the Court's ruling in *Atlantic Marine*. *See Atlantic Marine,* 134 S.Ct. at 580. However, that portion of the opinion does not invalidate the Fifth Circuit's holding as to the scope of the forum selection clause.

(1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state. *Id. citing Carnival Cruise Lines,* 499 U.S. at 595, 111 S.Ct. at 1528 and *The Bremen*, 407 U.S. at 12–13, 15, 18, 92 S.Ct. at 1914–15, 1916, 1917. The party resisting enforcement bears a "heavy burden of proof." *Haynsworth,* 121 F.3d at 967 *citing The Bremen*, 407 U.S. at 17.

In this case, Premiere makes no argument as to any of these factors. Accordingly, there is no basis for this Court to find the forum selection clause invalid or unenforceable.

**III. Transfer Pursuant to 28 U.S.C. § 1404(a)**

*Atlantic Marine* laid out the process courts must follow in ruling on an § 1404(a) motion that seeks to enforce a valid forum-selection clause. *In re Lloyd's Register North America, Inc.*, 780 F.3d 283, 293 (5th Cir. 2015). The usual § 1404(a) analysis is modified to ensure that "a valid forum selection clause [will be] given controlling weight in all but the most exceptional cases." *Atl. Marine*, 134 S.Ct. at 581. The plaintiff's choice of forum will not be given any weight. *In re Lloyd's Register North*

*America, Inc.*, 780 F.3d at 294 *citing Atl. Marine*, 134 S.Ct. at 581. Instead of independently weighing the private interests of the parties[3], the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id. quoting Atl. Marine*, 134 S.Ct. at 582. The court must then weigh only the public-interest factors, which include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 293-294 *quoting Atl. Marine*, 134 S.Ct. at 581 n. 6 (citations omitted). Because the public interest factors will rarely defeat a transfer motion, "the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 134 S.Ct. at 581.

    Premiere has not identified any applicable factors that render this motion one of those unusual cases. Premiere argues only private interest factors, namely, the inconvenience of litigating this action in Connecticut due to the alleged location of documents and witnesses. Under *Atlantic Marine*, these arguments may not be considered because the private interest factors must be weighed entirely in favor of the

---

[3]In the typical case not involving a forum selection clause, private interest factors considered by the Court include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir.2008) (*en banc*) (citations omitted).

preselected forum, Connecticut.

Premiere has not cited any public interest factors to show why this is the exceptional case in which the valid forum-selection clause should not be enforced. While there is minimal local interest given that Premiere's principal place of business is in Iberia Parish, Louisiana, there is evidence before this Court which indicates that the contract was negotiated and executed from the offices it maintains in Houston, Texas. Tangoe's Regional Vice President, Lisa Barton, is alleged by Premiere to have solicited Premiere's business and to have conducted a presentation at Premiere's Houston, Texas office. The Contract was executed by Premiere in Texas. There is no evidence that the negotiations leading up and including the execution of the Contract took place in Louisiana.

Further, there is no evidence of any administrative difficulties flowing from court congestion. Thus, these factors remain neutral. On the other hand, while both this Court and the district of Connecticut are equally capable of applying federal law, the contract provides for the application of Connecticut state law, the application of which the District of Connecticut is likely to be better suited. This factor therefore tilts in favor of transfer. In sum, Premiere has not demonstrated that application of the public-interest factors disfavor transfer as required to override the otherwise presumptive effect of the forum selection clause of the contract.

## CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that Tangoe's Motion to Transfer [rec. doc. 8] be **GRANTED**, and, accordingly, that this action be transferred to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1404(a).

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by F.R.C.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *Douglass v. United Services Automobile Association*, **79 F.3d. 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed this 20th day of June, 2016, at Lafayette, Louisiana.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE